# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEIZURE WARRANT

I, Jared Wooderson, Special Agent, Internal Revenue Service, being duly sworn, depose and state as follows:

## INTRODUCTION AND BACKGROUND

1.  This Affidavit is made in support of Seizure Warrants for the following property:

    A.  2008 Bentley Continental - Coupe (VIN: SCBCP73W78C053552);

    B.  Contents of Robinhood Markets Inc. account number 114492879, styled as Matthew France, located at 3500 South DuPont Hwy, Dover, DE 19901;

    C.  2020 BMW M8 (VIN: WBSAE0C04LCD09566);

    D.  2011 Maserati Granturismo S Automatica – coupe (VIN: ZAM45KLA1B0057485);

    E.  2021 Tesla Model S Plaid (VIN: 5YJSA1E61MF439529);

    F.  2023 Tesla Model Y Performance (VIN: 7SAYGDEF8PF589901);

The vehicles sought to be seized are all believed to be within the Western District of Missouri, while the account held by Robinhood Markets Inc. is located within the District of Delaware.

2.  Probable cause exists to believe that funds in Robinhood Markets Inc. account ending 2879, a 2008 Bentley Continental (VIN: SCBCP73W78C053552), a 2020 BMW M8 (VIN WBSAE0C04LCD09566), a 2011 Maserati Granturismo S Automatica – coupe (VIN ZAM45KLA1B0057485), a 2021 Tesla Model S Plaid (VIN 5YJSA1E61MF439529), and a 2023 Tesla Model Y Performance (VIN: 7SAYGDEF8PF589901) are proceeds of wire fraud, in violation of 18 U.S.C. § 1343 and proceeds of money laundering, in violation of 18 U.S.C. § 1957, and are subject to civil and criminal forfeiture pursuant to 18 U.S.C. §§ 981 and 982.

1

3. I am a Special Agent with the Internal Revenue Service-Criminal Investigation (IRS-CI) and have been so employed since 2022. I am assigned to the St. Louis field office where I have specialized in white collar crime and fraud investigations of various kinds. I am responsible for, among other assignments, conducting investigations of alleged criminal violations of Title 18, United States Code, Sections 1956 and 1957, money laundering, as well as the underlying Specified Unlawful Activities to money laundering including Title 18, United States Code, Section 1343, wire fraud, and Title 18, United States Code, Section 1344, bank fraud.

4. I have personally participated in investigations involving the violations of federal law regarding bank fraud, wire fraud, and other federal violations such as money laundering that result from such unlawful activity. I have personally participated in the execution of search warrants, involving the search for various types of evidence and property.

5. IRS-CI has been investigating **Matthew France (France)**, for violations of wire fraud (18 U.S.C. § 1343), and money laundering (18 U.S.C. § 1957) (herein referred to as the Subject Offenses) through a scheme to embezzle funds from his clients through various methods. Based on the results of this investigation, there is probable cause to believe that **France** embezzled funds from clients and spent the funds on personal expenditures in violation of Title 18, United States Code, Section 1343 and Title 18, United States Code, Section 1957.

6. The information contained in this affidavit is based on the results of this investigation. This affidavit does not contain all the information known to me regarding the investigation; however, it contains enough information to establish probable cause to authorize the seizure of the property outlined in this affidavit.

2

## STATUTORY FRAMEWORK

7. 18 U.S.C. § 1343 (wire fraud) criminalizes devising or intending to devise a scheme to defraud (or performing specific fraudulent acts) through the use of an interstate telephone call or electronic communication.

8. 18 U.S.C. § 1957 (the money laundering spending statute) criminalizes knowingly engaging or attempting to engage in a monetary transaction in criminally derived property from a specified unlawful activity (including wire fraud) in an amount greater than $10,000.

9. The proceeds of wire fraud are subject to forfeiture under both civil and criminal forfeiture authorities. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud is subject to civil forfeiture. Pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained from wire fraud is subject to criminal forfeiture.

10. Property involved in a money laundering offense is subject to forfeiture under both civil and criminal forfeiture authorities. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to civil forfeiture. In addition, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in a violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to criminal forfeiture. Forfeiture pursuant to these statutes applies to more than just the proceeds of the crime. These forfeitures encompass all property "involved in" the crime, which can include untainted funds that are comingled with tainted funds derived from illicit sources. *United States v. Nicolo*, 597 F.Supp.2d 342, 355 (W.D.N.Y. 2009) (if funds in a comingled bank account are subject to forfeiture as property involved in money laundering, then vehicle purchased with commingled funds is forfeitable as

3

property traceable to such property); *United States v. Prevezon Holdings, Ltd.*, 251 F.Supp.3d 684 (S.D.N.Y. 2017) (if clean money is used to facilitate the laundering of dirty money in a comingled account, the clean money becomes subject to forfeiture, and property traceable to the now forfeitable money is forfeitable as well); *United States v. Guerrero*, 2021 WL 2550154, *9 (N.D. Ill. June 22, 2021) (it was irrelevant that the forfeited property was traceable only in part to the fraud proceeds; any property commingled with the fraud proceeds was forfeitable as property involved in the money laundering, and the forfeited property was traceable to it as well as to the fraud proceeds), aff'd 37 F.4th 1215 (7th Cir. 2022). The "government need not trace each dollar to a criminal source to prove a violation of 18 U.S.C. § 1957." *United States v. Mooney*, 401 F.3d 940, 946-47 (8th Cir. 2005).

11. This application seeks a seizure warrant under both civil and criminal authority because the property to be seized could be placed beyond process if not seized by warrant.

12. Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized by a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture. A civil forfeiture action may be brought in any district where "acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). As detailed below, acts or omissions in furtherance of the fraud and money laundering scheme under investigation occurred in the District of Western Missouri. The criminal forfeiture statute, 18 U.S.C. § 982(b)(1), incorporates the procedures in 21 U.S.C. § 853 (other than subsection (d)) for a criminal forfeiture action. 21 U.S.C. § 853(f) provides authority for the issuance of a seizure warrant for property subject to criminal forfeiture.

13. Based on the foregoing, the issuance of these seizure warrants is authorized under

4

21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) for criminal forfeiture; and 18 U.S.C. §§ 981(b) and 984 for civil forfeiture. Notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, the issuance of this seizure warrant in this district is appropriate under 18 U.S.C. § 981(b)(3) and 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in the Western District of Missouri.

## PROBABLE CAUSE (CASE OVERVIEW)

14. In January 2023, IRS-CI started investigating **France**. **France** is an accountant who owns **Matrix Accounting and Tax LLC (Matrix)** and **Matt France Inc (MFI)**. Matrix is a legitimate accounting business that offers tax preparation and filing for individuals and businesses. Matrix also offers payroll services such as paying out payroll to the client's employees and filing the client's quarterly returns. Matrix started in 2012 under Shawna Thompson (Thompson) and France joined Matrix between 2012-2014. After Thompson and France's relationship soured, Thompson left Matrix and France became sole owner in 2017. France owns and operates both Matrix and MFI as S-corporations for tax purposes. The investigation revealed **France** engaged in wire fraud and money laundering using various means to defraud some of his clients.

15. One specific scheme to defraud involved France stealing a home from an elderly client. In December 2019, 79-year-old client SM approached France on how to handle a home given to him by a friend who owed SM money. France convinced SM to transfer the ownership of the home to a Limited Liability Company ("LLC") to remove the home from under SM's name but still retain ownership through an LLC. To create the LLC, **France** obtained an Employer Identification Number (EIN) through the IRS by completing Form SS-4, Application for Employer Identification Number (SS-4) online for Morehouse LLC (Morehouse) on December 26, 2019. SS-4 applications are processed through the IRS's EIN operations center in Cincinnati, Ohio. **France**

5

listed **Matrix's** address (300 S Jefferson Ave) as the address for Morehouse and listed himself as sole member even though SM intended to be the sole owner of Morehouse. The IRS mailed confirmation of the SS-4 to the address listed on the application (300 S Jefferson Ave). SM never received the SS-4 confirmation since France listed Matrix's address as Morehouse's address. **France** establishing Morehouse with himself as sole member was the beginning of **France's** overall scheme to ultimately obtain the proceeds of the sale of a home from SM. During a search warrant served on **France's** home and business, two electronic files of Morehouse LLC Operating Agreements were discovered on a hard drive. One file named SM as sole owner and the other named **France** as the sole owner. Based on his discussions with **France** and forms he believed he signed (such as the Morehouse LLC Operating Agreement and Warranty Deed), SM believed he was the sole member of the LLC. However, on January 23, 2020, **France** named himself sole member on the warranty deed recorded with Greene County as well as other documentation found regarding the creation of Morehouse. France naming himself as sole owner of Morehouse LLC effectively transferred the ownership of the home from SM to France once the warranty deed transfer was recorded with Greene County. This gave **France** sole ownership of the house; however, SM believed he still owned the house through Morehouse. SM believed he was tricked into signing documents by France since France had SM routinely sign documents when they met. SM trusted France since SM viewed France as a friend and had been SM's accountant for close to ten years. SM admitted he didn't always read through everything he signed at France's office due to the trusting relationship between the two.

16. Unaware that France fraudulently named himself as sole owner of Morehouse SM sold the house for $357,647.86 on July 16, 2021. SM signed all contracts and agreements as sole member of Morehouse LLC. On several of the contracts, SM electronically signed using

6

Authentisign via email. Authentisign is an application created and maintained by Lone Wolf Real Estate Technologies based in Dallas, Texas. SM wanted to use the proceeds of the sale to help pay the IRS debt of the friend who initially gave SM the house, so he took the check to **France** to pay over to the IRS on his friend's behalf. **France** told SM he would mail the check in to the IRS. However, on August 4, 2021, **France** opened a business bank account for Morehouse at Central Bank of the Ozarks (Acct 1369) located at 1800 South Glenstone Avenue, Springfield, Missouri. **France** listed himself as the sole signer and deposited the proceeds of the home sale into the account on August 4, 2021. During the account creation process, Central Bank used several out-of-state vendors and third parties to research and verify information provided by **France**. Central Bank also sent the account information to a company based in Texas called Abrigo for continual monitoring. **France** used the account to pay for personal expenses including the purchase of a Bentley and contributions to a Robinhood account. Those transactions were all over $10,000.00 each. The only significant deposit into Acct 1369 was the initial deposit of $357,647.86 on August 4, 2021. Defrauding SM by concealing the true ownership of Morehouse LLC and then depositing and using the proceeds of the sale of the house for purchases of $10,000.00 or greater constitute a violation of 18 U.S.C. §§ 1343 and 1957.

17. France also engaged in wire fraud and money laundering using the fraudulent business **MFI**. On March 3, 2023, IRS-CI conducted France's first interview at Matrix. **France** stated in the interview that **MFI's** only purpose was to share revenues and expenses with **Matrix**. However, **France** provided contradictory purposes of **MFI** throughout the investigation. **France** has at various points claimed **MFI** was involved in numerous different business ventures including marketing/media relations, media content development, various business support services

7

including business consulting, investments (tangible and intangibles), and property investments. There is no evidence of **MFI** engaging in any of the business ventures claimed by **France**.

18. Two large sources of **MFI's** income are unauthorized withdrawals from various clients by disguising QuickBooks transactions as payroll and unauthorized client checks written by **France** to **MFI**. **France** wrote several checks to **MFI** using client Victim 2, MV's, business checkbook. IRS-CI interviewed MV on April 9, 2024, and MV claimed he did not write or authorize any checks to MFI. MV stated he had never heard of MFI and believed he was only a client of Matrix. From 2015 to 2024, MV gave **France** blank checks to pay for MV's business expenses and trusted **France** as his accountant. **France** would send emails and text messages to MV whenever he needed more of MV's business checks. This practice dates back to 2015 based on emails between **France** and MV. **France**'s email account was housed by Microsoft in California, while MV's email account was housed by Yahoo in California.

19. Client engagement letters for **MFI** were found during a search warrant at **France's** residence hidden away in a filing cabinet in the office and in a gun safe in **France's** garage that detailed the ability and authority of **France** to withdraw funds from clients' bank accounts at any time without providing notice or invoices. IRS-CI summonsed France for all of his client engagement letters on March 3, 2023 but France claimed the letters were lost in a Dropbox hack. Clients interviewed by IRS-CI had never heard of **MFI** and never authorized any funds to be transferred into **MFI's** bank account. Although the engagement letters were apparently signed by the clients, the clients did not remember signing any contracts or agreements with **MFI**. All these clients believed they were only clients of **Matrix**, not **MFI**. Embezzling funds from clients through fraudulent ACH transactions using QuickBooks and other software and then spending the funds on transactions over $10,000 is a violation of 18 U.S.C. §§ 1343 and 1957

8

Case 6:25-sw-02154-DPR    Document 1-1    Filed 10/15/25    Page 8 of 16

20. **France** established multiple LLCs to shelter many of his assets — including vehicles and the home France stole from SM. The chart below details some of the various LLCs **France** set up to shelter his assets. Based on my knowledge and experience, when individuals create several LLCs without any other business activity and place assets in the LLCs' name, individuals are typically trying to conceal the ownership. After France's initial subject interview on March 3, 2023, France began to move assets under various existing LLCs and created new ones such as Eagletalon Asset Management and Kali Asset Management.

| Name of LLC | Filing Date | State |
|---|---|---|
| Eagletalon Asset Management | 03/23/2023 | New Mexico |
| Finley Enterprises LLC | 08/17/2018 | Missouri |
| Kali Asset Management | 09/03/2024 | Missouri |
| Morehouse LLC | 01/20/2020 | Missouri |

21. The chart below details the registered LLCs for four vehicles listed in this affidavit.

| Make | Model | Year | Registered |
|---|---|---|---|
| Bently | Continental | 2008 | Finley Enterprises LLC |
| BMW | M8 Coupe | 2020 | Kali Asset Management |
| Tesla (red) | Model S | 2021 | Eagletalon Asset Management LLC |
| Tesla (white) | Model Y | 2023 | Kali Asset Management |

## THE FINANCIAL ACCOUNTS

22. As part of **France's** wire fraud and money laundering scheme, **France** primarily used two bank accounts.

9

### UMB BANK ACCOUNT *0206

23. Records obtained from UMB Bank showed **France** applied for a business bank account (account ending 0206) styled as **MFI** on or about October 29, 2009. France opened the account at UMB Bank branch 721, which is located at 1150 E Battlefield St, Springfield, Missouri. On the Commercial Signature Card, **France** was listed as President of the company and was listed as the only authorized signer on the account.

### CENTRAL BANK ACCOUNT *1369

24. Records obtained by Central Bank of the Ozarks revealed **France** opened a business bank account (account ending 1369) titled under Morehouse LLC on August 4, 2021, at the main Central Bank of the Ozarks branch at 1800 South Glenstone Avenue, Springfield, Missouri. **France** listed himself as the owner of Morehouse LLC and sole signer on the account on the Certification of Beneficial Owners to open the account. This account was solely funded from proceeds of wire fraud.

### **THE FINANCIAL TRANSACTIONS**

25. Based on the evidence obtained during the investigation, **France** stole $357,647.86 from SM through a home sale in 2021 as previously described in the probable cause section. The $357,647.86 was deposited by **France** into Central Bank account ending in 1369 on August 4, 2021, which was the same day **France** opened the account. **France** listed himself as the sole signor on the account, but the name of the account was styled as Morehouse LLC. There is probable cause to believe the deposit of $357,647.86 are proceeds of wire fraud, in violation of 18 U.S.C. § 1343.

26. On or about August 16, 2021, and August 23, 2021, **France** wired $35,000.00 and $27,108.25 respectively, to a car dealership in Texas from Acct 1369 at Central Bank of the Ozarks located at 1800 South Glenstone Avenue, Springfield, Missouri to purchase a green 2008 Bentley

Continental (VIN: SCBCP73W78C053552) using stolen funds from SM. **France** titled the Bentley under his own name. On February 17, 2023, **France** transferred the title of the Bentley to an LLC he created named Kratos Asset Management LLC. After **France**'s subject interview on March 3, 2023, **France** transferred the title of the Bentley to another LLC he created through the state of Wyoming named Talon Asset Management LLC on March 24, 2023. Finally, **France** transferred ownership of the Bentley to another LLC he created named Finley Enterprises LLC in March 2024. Since the funds used to purchase the vehicle came from the proceeds of the home sale by SM, there is probable cause to believe that this vehicle was purchased with proceeds of wire fraud. Further, there is probable cause to believe these financial transactions were a violation of 18 U.S.C. § 1957 and that the vehicle constitutes property involved in a money laundering transaction. Accordingly, the vehicle is subject to forfeiture pursuant to 18 U.S.C. §§ 981 and 982.

27. **France** had sole control over Robinhood Marketing account ending 2879. Between January 11, 2022 to May 13, 2022, **France** transferred approximately $90,000 from Central Bank account ending 1369 to the Robinhood account ending 2879. On January 11, **France** transferred $40,000 from Acct 1369 to Robinhood Acct 2879. On May 13, 2022, **France** transferred $24,000 and $26,000 from Acct 1369 to Robinhood Acct 2879 in two separate transactions. France conducted five more smaller transactions totaling $1,900 from Acct 1369 to Robinhood account 2879 from May 2022 to June 2022. There is probable cause to believe these financial transactions were a violation of 18 U.S.C. § 1957 and that funds constitutes property involved in a money laundering transaction. Any proceeds remaining in this account or traceable from this account to other accounts are forfeitable to the United States pursuant to 18 U.S.C. §§ 981 and 982.

28. On December 23, 2020, **France** purchased a 2019 BMW M2 Competition (VIN: WBS2U7C56K7D14402) for $48,199.00 from Elite Mercedes located in Springfield, Missouri.

11

**France** financed $37,699.00 through Fifth-Third Bank, which is headquartered in Cincinnati, Ohio. From February 4, 2021 to February 17, 2021, **France** made three payments totaling $37,938.24 ($10,662.80 on February 5, 2021; $10,500 on February 9, 2021; $16,775.44 on February 17, 2021) from UMB business bank account 0206 in the name of **MFI** to pay off the balance of the purchase. The balance of Acct 0206 on January 31, 2021 was $12,083.79. The ending balance on February 28, 2021 was $27,107.36. Two large check deposits funded most of the credits for February which included checks for $42,500 and $12,000. Both were deposited on February 4, 2021 at UMB Bank branch 722, which is located at 2300 N Glenstone Ave, Springfield, Missouri, and were written to **MFI** from client MV. From the evidence obtained during the investigation, both checks were not authorized by MV, and the actions taken by **France** to obtain the checks constitutes violations of wire fraud. **France** initially had the 2019 BMW M2 Competition titled under his name but titled the vehicle under Kratos Asset Management in April 2021. On or about February 10, 2023, **France** traded in the 2019 BMW M2 Competition for a 2020 BMW M8 (VIN: WBSAE0C04LCD09566) from Modern Motorcars located in Nixa, Missouri. **France** received a trade-in value of $51,000.00 for the 2019 BMW M2 Competition towards the purchase of the 2020 BMW M8. The total purchase price of the 2020 BMW M8 was $94,999.00 with **France** paying the balance in cash. **France** titled the 2020 BMW M8 under his Talon Asset Management LLC in March 2023. In July 2024, **France** re-titled the vehicle under Kali Asset Management LLC. There is probable cause to believe these financial transactions in 2021 and 2023 were a violation of 18 U.S.C. § 1957 and that the vehicle constitutes property involved in a money laundering transaction. Accordingly, the vehicle is subject to forfeiture pursuant to 18 U.S.C. §§ 981 and 982.

29. On or about August 23, 2022, **France** purchased a 2011 Maserati Granturismo S Automatica – coupe (VIN: ZAM45KLA1B0057485) for $41,994.00 from Nelson Mazda located in Tulsa, Oklahoma. **France** financed $25,503.00 of the purchase price through Tinker Federal Credit Union located in Tinker AFB, Oklahoma. On October 11, 2022, **France** paid $25,367.46 from account 0206 by check #5487 toward his total balance. One large check deposit of $68,475.00 funded most of the credits in September 2022 for Acct 0206. The check was written to **MFI** from MV and deposited into Acct 0206 on September 9, 2022, at UMB Bank branch 722, which is located at 2300 N Glenstone Ave, Springfield, Missouri. Two other checks were written for $9,230.00 and $7,889.00 from MV to **MFI** and were deposited on September 7, 2022, at UMB Bank branch 722, which is located at 2300 N Glenstone Ave, Springfield, Missouri. From the evidence obtained during the investigation, the checks were not authorized by MV, and the actions taken by **France** to obtain the checks constitutes violations of wire fraud. Also from September 8, 2022, to October 11, 2022, **France** withdrew and transferred a total of $16,385.84 in 11 total transactions from MV's business account into Acct 0206 via ACH. From evidence obtained during the investigation, these unauthorized ACH withdrawals from MV's business account constitute violations of wire fraud. Further, there is probable cause to believe the payment of $25,367.46 to Tinker Federal Credit Union was a violation of 18 U.S.C. § 1957 and that the vehicle constitutes property involved in a money laundering transaction. Accordingly, the vehicle is subject to forfeiture pursuant to 18 U.S.C. §§ 981 and 982.

30. On or about May 16, 2019, **France** purchased a 2016 Tesla Model S (VIN: 5YJSA1E43GF122449) for $75,200.00 from Scoreboard Automotive Sales and Leasing LLC located in Eureka, Missouri. **France** financed $36,700.00 from 1st Financial Credit Union (now Alltru Credit Union) located in St. Charles, Missouri. On November 12, 2020, **France** paid

13

$25,000.00 from account 0206 by check #5390 toward his total balance. One large check deposit of $28,500 funded most of the credits in November 2020 in Acct 0206. The check was written to **MFI** from MV and deposited into Acct 0206 on November 4, 2020 at UMB Bank branch 722, which is located at 2300 N Glenstone Ave, Springfield, Missouri. From the evidence obtained during the investigation, the check was not authorized by MV, and the actions taken by **France** to obtain the check constitutes violations of wire fraud. On or about May 19, 2023, **France** traded in his 2016 Tesla Model S (VIN: 5YJSA1E43GF122449) for a 2021 Tesla Model S Plaid (VIN: 5YJSA1E61MF439529). **France** received a trade-in value of $40,000.00 from the 2016 Tesla Model S. **France** also received a trade-in credit of $37,000.00 for a 2023 Nissan Maxima. On or about March 3, 2023, **France** paid a $33,037.40 loan payment from Acct 1369 for the 2023 Nissan Maxima. The total sales price for the 2021 Tesla Model S Plaid was $94,999.00. **France** purchased the 2021 Tesla Model S Plaid under Eagletalon Asset Management LLC.. There is probable cause to believe these financial transactions in 2020 and 2023 were a violation of 18 U.S.C. § 1957 and that the vehicle constitutes property involved in a money laundering transaction. Accordingly, the vehicle is subject to forfeiture pursuant to 18 U.S.C. §§ 981 and 982.

31. On September 30, 2021, France purchased a 2018 BMW i3 (VIN: WBY7Z6C54JVB96982) from BMW of San Francisco for a total of $32,184.00. France financed $24,320.00 through BMW Financial Services with monthly payments of $436.40 for five years. BMW Financial Services is located in Hilliard, Ohio. From November 16, 2021, to January 27, 2022, France made nine total payments from account 0206 for a total of $25,768.21 to pay off the 2018 BMW i3. The balance of Acct 0206 was $16,067.83 on October 31, 2021. During the month of November 2021, there were deposits totaling $69,077.76 and debits totaling $64,814.53. The ending balance of Acct 0206 on November 30, 2021, was $20,276.06. Two large check deposits

funded most of the credits for November which included checks for $38,000 and $7,800. Both were deposited on November 15, 2021, at UMB Bank branch 722, which is located at 2300 N Glenstone Ave, Springfield, Missouri, and were written to **MFI** from client MV. From the evidence obtained during the investigation, both checks were not authorized by MV, and the actions taken by France to obtain the checks constitutes violations of wire fraud. France initially titled the BMW i3 under his name but changed the ownership three times to various LLCs he created: Fenix Asset Management LLC, Talon Asset Management LLC, and Kali Asset Management LLC. On or about October 30, 2024, France traded in the 2018 BMW i3 for a white 2023 Tesla Model Y Performance (VIN: 7SAYGDEF8PF589901) from Modern Motorcars located in Nixa, Missouri. France received a trade in-value of $14,500.00 for the 2018 BMW i3 towards the purchase of the white 2023 Tesla Model Y Performance. The total purchase price of the 2023 Tesla Model Y Performance was $37,999.00. France paid off the remaining balance with a Matrix Accounting and Tax LLC check (#50138) written to Modern Motorcars for $23,898.00 on October 30, 2024. There is probable cause to believe these financial transactions in 2021 and 2024 were a violation of 18 U.S.C. § 1957 and that the vehicle constitutes property involved in a money laundering transaction. Accordingly, the vehicle is subject to forfeiture pursuant to 18 U.S.C. §§ 981 and 982.

32. Due to the liquidity of bank and investment accounts, particularly in consideration of electronic banking, such as ATMs, telephonic banking and online banking, funds can be moved with great ease. Bank safeguards to protect accounts which have been restrained can be easily overridden, accidentally or purposefully, rendering safeguards inadequate.

33. Additionally, due to the movable nature of vehicles, a restraining order is not adequate to assure the continued availability of the aforementioned vehicles for forfeiture.

34. For the reasons set forth above, your affiant therefore requests permission to seize, rather than restrain, the aforementioned property.

## CONCLUSION

35. Based on the information above, there is probable cause to believe **France** committed wire fraud by embezzling funds from various clients by disguising transactions as payroll into Acct 0206. Based on the information above, there is probable cause to believe **France** committed wire fraud by embezzling funds from a home sale by one of his clients and depositing the proceeds into a bank account owned and controlled solely by **France**. Based on the information above, there is probable cause to believe **France** committed money laundering by purchasing a 2008 Bentley Continental - Coupe (VIN: SCBCP73W78C053552), a 2020 BMW M8 (VIN: WBSAE0C04LCD09566), a 2011 Maserati Granturismo S Automatica – coupe (VIN: ZAM45KLA1B0057485), a 2021 Tesla Model S Plaid (VIN: 5YJSA1E61MF439529), a 2023 Tesla Model Y Performance (VIN: 7SAYGDEF8PF589901), and transferring funds to Robinhood account ending 2879 using wire fraud proceeds and are subject to civil and criminal forfeiture pursuant to 18 U.S.C. §§ 981 and 982.

Jared Wooderson
Special Agent, IRS-Criminal Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41 by telephone or other reliable electronic means on this ___15th___ day of October, 2025.

HONORABLE DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE